UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERAME CROWE,

                Petitioner,                Case Number 2:11-CV-14529
                                              Honorable Gerald E. Rosen

JOHN PRELESNIK,

                Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

This matter is before the Court on Petitioner Jerame Crowe's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. On September 28, 2005, Petitioner was sentenced to two terms of mandatory life imprisonment, a concurrent term of 40-to-60 months, and a consecutive two-year term for his Wayne Circuit Court convictions of two counts of first-degree murder, MICH. COMP. LAWS § 750.316, possession of a firearm by a felon, MICH. COMP. LAWS § 750.224f, and commission of a felony with a firearm. MICH. COMP. LAWS § 750.227b. The petition challenges his convictions on five grounds: (1) the trial court's comments at trial belittled Petitioner and unfairly limited his right to cross-examine witnesses; (2) the prosecutor committed misconduct; (3) Petitioner was denied the effective assistance of counsel during his direct appeal; (4) the admission of an audio recording between co-defendant and a police informant violated Petitioner's confrontation rights; and (5) the trial court erroneously instructed the jury on the definition of "reasonable doubt." The Court finds that the petition has been filed in violation of the one-year statute of limitations. The Court also finds that the state court adjudication of Petitioner's claims did not run contrary to, or involve an unreasonable application of, clearly established Supreme Court law. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability.

### I. Facts and Procedural History

Petitioner's convictions result from the November 22, 2002, late-night shooting deaths of Robert Richards and Raime Denson. The couple were shot in their bed after the perpetrators, armed with assault rifles and handguns, kicked-in their front door and stormed into their Taylor house. Richards was shot eighteen times, and Denson was shot ten times.

At Petitioner's trial, ATF agent Steve Bailey testified that about two months prior to these murders, he attended the preliminary examination held for another murder in which Robert Richards testified against William "Twerp" Johnson. Bailey saw that Petitioner was also in attendance at the preliminary examination. Bailey saw Petitioner take notes at the exam and saw him write Richard's name on a notepad.

Bailey was familiar with Petitioner. In August of 2002, while he was working surveillance at a funeral, Bailey saw Petitioner escort William Johnson's girlfriend to the service. There was a warrant out for Johnson's arrest, and so when he appeared at the funeral, agents attempted to arrest him. Petitioner, however, managed to help Johnson evade arrest by driving him away at a high rate of speed.

In December of 2003, Angelo Hardin came forward to authorities with information about the Richards/Denson murders. He testified at Petitioner's trial under an immunity agreement that on the night of the murder Petitioner and Davon Griggs came to his door dressed in black and armed with handguns. They told Hardin, a self-described car thief, that they needed him to steal two vehicles for them so that they could "get Twerp home." Hardin helped the two men steal a car and a van. He drove both stolen vehicles to a bump-shop where Petitioner and Griggs worked.

In June of 2004, authorities obtained the cooperation of Keith Johnson, William Johnson's

uncle. Keith Johnson was under indictment for a narcotics conspiracy. In exchange for leniency, he agreed to wear a wire and talk to Griggs about the Richards/Denson murders. Johnson used doctored police reports containing inaccurate information about the murders as a subterfuge to talk to Griggs about the crimes. During the recorded conversation, which was played for Petitioner's jury, Griggs noted the inaccuracies in the reports and described in detail how he and Petitioner killed the victims. He noted that Petitioner kicked in the door, that he shot the victims with an AK-47, but Petitioner's assault rifle jammed, so he had to use his handgun instead.[1]

The police arrested Griggs and played the tape for him. He subsequently pled guilty to two counts of second-degree murder in exchange for his testimony against Petitioner. At Petitioner's trial, Griggs testified in detail about the murders. He testified how he and Petitioner were dressed in black and armed with assault rifles and handguns. He described how they solicited Hardin to steal the vehicles for them. He explained how Petitioner kicked-in the victims' door and rushed towards the bedroom. Robert Richards managed to get out of bed and rush at Griggs, but Griggs shot him in the abdomen. Denson stayed in the bed. Petitioner's rifle jammed, so he switched to his handgun. Both men continued to shoot the victims multiple times, and then fled the house.

Tony Wright, who worked at the bump shop with Petitioner and Griggs, testified that sometime in 2002, he overheard Petitioner talking about the murders. Wright testified that the Johnson family was involved in running drugs, and that Keith Johnson appeared to be the head of the family. Wright admitted that he had also been involved in the drug trafficking operation.

Petitioner testified in his own defense, essentially claiming that Bailey, Griggs, Hardin, and

---

[1]Keith Johnson was found dead in his home, shot in the head, on the morning of the preliminary examination in Petitioner's case. At the time of Petitioner's trial it was unclear whether Johnson had committed suicide or was murdered.

Wright were lying. He testified that on the night of the murder he was at home sleeping.

After arguments, instructions, and deliberations, the jury found Petitioner guilty. The trial court sentenced him as indicated above.

Petitioner subsequently filed a claim of appeal in the Michigan Court of Appeals, raising what now form his first two habeas claims. The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *People v. Crowe*, No. 266908, 2007 WL 1940740 (Mich. Ct. App. July 3, 2007).

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same claims as in the Michigan Court of Appeals. The Michigan Supreme Court denied the application on October 29, 2007, because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Crowe*, 480 Mich. 925 (2007)(table).

On August 7, 2008, Petitioner returned to the trial court and filed a motion for relief from judgment. The motion raised what now form Petitioner third, fourth, and fifth habeas claims. The trial court denied the motion for relief from judgment, finding that none of the claims had merit. *People v. Crowe*, No. 04-012093-01-FC, Order (Wayne County Cir. Ct. Sept. 25, 2008).

Petitioner filed an untimely delayed application for leave to appeal. The Michigan Court of Appeals dismissed the delayed application for leave to appeal because it was not filed within the then applicable 12-month time period:

> The delayed application for leave to appeal from the September 25, 2008 order denying relief from judgment is DISMISSED because appellant failed to file the application within the time period required by MCR 7.205(F)(3) and none of the exceptions found in MCR 7.205(F)(4) apply.

*People v. Crowe*, No. 294560 (Mich. Ct. App. Nov. 17, 2009).

Petitioner applied for leave to appeal this decision in the Michigan Supreme Court, but the

-4-

court denied relief on October 26, 2010, because it was not "persuaded that the questions presented should be reviewed by this Court." *People v. Crowe*, 488 Mich. 910(2010)(table).

On October 10, 2011, Petitioner's then filed the instant application for habeas relief, presenting the following claims:

I. Mr. Crowe was denied a fair trial and his constitutional rights to present a defense and to due process under the Sixth and Fourteenth Amendments, through the trial court's (a) comments and interjections, and (b) limitations upon cross-examination, such that the defense was belittled and unfairly limited in its presentation.

II. Mr. Crowe was denied his Sixth and Fourteenth Amendment rights to a fair trial and due process of law through misconduct of the prosecutor, which consisted of improper questioning and argument.

III. Defendant Crowe's reference to the record and supporting facts demonstrate that the failure of appellate counsel to raise the issues presented in this Rule 6.500 action constitute ineffective assistance of counsel and satisfy the requirement that he show "cause" and "prejudice" under Rule 6.508(d)(3)(a).

IV. Defendant Crowe was deprived of his liberty without due process of law, his constitutional right to a fair trial and confrontation, by the erroneous admission into evidence of an audiotape recording and its transcript, which co-defendant and a government agent which implicated defendant crowe in the charged homicides.

V. Defendant Crowe was deprived of his liberty without due process of law, his right to a fair trial, his right to a properly instructed jury, and his right to the presumption of innocence, by the erroneous and misleading instruction given by the trial court on reasonable doubt.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories

-6-

supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### III. Analysis

#### A.  Statute of Limitations

Respondent asserts that the petition was untimely filed. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides a one-year statute of limitations for habeas petitions filed by state prisoners seeking habeas relief from state court judgments. 28 U.S.C. § 2244(d)(1). The limitations period runs from one of four specified dates, usually from the date on which the

judgment became final by the conclusion of direct review or when the time for seeking such review

expires. 28 U.S.C. § 2244(d)(1)(A). The limitations period is tolled during any time in which "a

properly filed application for State post-conviction or other collateral review . . . is pending," 28

U.S.C. § 2244(d)(2).

The statute of limitations began to run in this case when Petitioner's conviction "became final

by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C.

2244(d)(1)(A). "Direct review," for purposes of subsection 2244(d)(1)(A), concludes when the

availability of direct appeal to the state courts and to the United States Supreme Court has been

exhausted. *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). The Michigan Supreme Court denied

leave to appeal from Petitioner's direct appeal on October 29, 2007. *People v. Crowe*, 480 Mich. 925

(2007)(table). Petitioner did not seek a writ of certiorari in the United States Supreme Court after

the Michigan Supreme Court denied leave to appeal in his direct appeal. His convictions therefore

became final on Monday, January 28, 2008, when the availability of a direct appeal to the United

States Supreme Court expired due to the expiration of the ninety-day deadline for seeking a writ of

certiorari. See Sup. Ct. R. 13.1; Sup. Ct. R. 30.1. The one-year statute of limitations began to run

on the following day, Tuesday, January 29, 2008. See Fed. R. Civ. P. 6(a)(1)(A).

The limitations period continued to run for 192 days. On August 7, 2008, Petitioner filed a

motion for relief from judgment with the trial court. The statute of limitations stopped running on

that date, and was tolled for the entire time that the motion and subsequent appeals were pending

in state court. See 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for

State post-conviction or other collateral review with respect to the pertinent judgment or claim is

pending shall not be counted toward any period of limitation under this subsection"); *Carey v.*

*Saffold*, 536 U.S. 214, 219-20 (2002) (application for state post-conviction relief remains "pending" until application has achieved final resolution through the state's post-conviction procedures).

On Tuesday, October 26, 2010, the Michigan Supreme Court denied leave to appeal the lower courts' denial of post-conviction relief. *People v. Crowe*, 488 Mich. 910 (2010)(table). The limitations period began running again the following day, Wednesday, October 27, 2010, and ran another 348 days, finally stopping on October 10, 2011, the date Petitioner signed and dated his petition. *See Houston v. Lack*, 487 U.S. 266 (1988). The limitations period thus ran a total of 540 days. The petition, therefore, was filed 175 days past the one-year deadline and is therefore untimely unless equitable tolling applies.

The AEDPA statute of limitations is subject to equitable tolling in appropriate cases. *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). A petitioner is entitled to equitable tolling if he shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 2562 (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). A petitioner may also be eligible for equitable tolling if he demonstrates a credible claim of actual innocence, so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice. *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005). Equitable tolling is used "sparingly" by the federal courts. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010). The party seeking equitable tolling bears the burden of proving that he is entitled to it. *Id.* "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000) (citation omitted).

Petitioner requested, and received, additional time to file a reply to Respondent's answer.

-9-

Petitioner stated that he needed additional time to respond to Respondent's argument that the petition was barred by the statute of limitation. The deadline for filling a reply, August 17, 2012, has long since past without Petitioner having filed one. In any event, it does not appear that Petitioner is entitled to equitable tolling. The state court records show that Petitioner capably filed pro se court papers during his state post-conviction review proceeding. He simply has not explained why he waited almost an entire year between the completion of state post-conviction review and filing the instant petition.

Nor has Petitioner demonstrated that he is actually innocent of the crimes of which he was convicted. Actual innocence can be the basis for equitable tolling when a petitioner "can present new evidence with undermines this court's confidence in the outcome of the trial." *Souter*, 395 F.3d at 600. The Sixth Circuit has held that, to form the basis for equitable tolling, a claim of actual innocence must be supported by "sufficient new facts such that it is more likely than not that no reasonable juror would have found the defendant guilty." *Id*. at 596, n. 11. "'Without any new evidence of innocence, even a concededly meritorious constitutional violation is not in itself sufficient' to reach the merits of a time-barred claim." *Connolly v. Howes*, 304 Fed. Appx. 412, 417 (6th Cir. 2008). The actual innocence exception does not afford a basis for equitable tolling here because Petitioner presents no credible new evidence to show that he did not commit the crimes. Indeed, the evidence presented at trial quite convincingly demonstrated his guilt.

## B. Merits Analysis

In addition to being untimely filed, the petition will also be denied because Petitioner's claims are without merit

-10-

## 1.  Limitations on Cross-Examination

Petitioner first alleges that he was denied his right to a fair trial and to confront witnesses when the trial court interrupted his cross-examination of prosecution witnesses Hardin.

The Sixth Amendment guarantees the right of an accused in a state criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI; see also *Pointer v. Texas*, 380 U.S. 400, 407-08 (1965). Cross-examination is a "primary interest secured" by the Confrontation Clause. *Douglas v. Alabama*, 380 U.S. 415, 418 (1965); see also *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974).

Trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, . . . interrogation that is repetitive or only marginally relevant. . . . "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)(quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam); see also *Davis*, 415 U.S. at 316 ("Cross-examination is . . . [s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation . . . ."). When "it is merely the extent of cross-examination that is limited, the trial judge retains a much wider latitude of discretion. Once cross examination reveals sufficient information to appraise the witness' veracity, confrontation demands are satisfied." *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000). Thus, "[w]here the trial court limits the extent of cross-examination, the inquiry for the reviewing court is 'whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory.'" *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2007) (quoting

*Dorsey*, 872 F.2d at 167).

Here, the trial court twice interrupted defense counsel's cross-examination of Hardin. On the first occasion, defense counsel was questioning Hardin about discrepancies between his trial testimony and his testimony during the preliminary examination. After pointing out the differences, defense counsel proceeded to ask Hardin whether he was telling the truth at the exam or at trial. At that point, the trial court interceded and directed defense counsel to move-on because he had already established his point. On the second occasion, Hardin testified that he helped Petitioner and Griggs steal the vehicles because he was scared of them. Defense counsel then sought to elicit from Hardin that he did not tell the police that he was scared or threatened. The trial court again cut-off questioning, stating that defense counsel knew that Hardin's statement did not mention being scared or threatened. Nevertheless, defense counsel was allowed to ask Hardin whether he told the police he had been scared, and Hardin admitted that he did not.

While both interruptions were intemperate, neither one deprived the jury of sufficient information to assess the defense theory. The jury was aware of the differences between Hardin's preliminary examination testimony and his trial testimony. At both proceedings he was equivocal as to whether it was Petitioner or Griggs or both who made particular statements on the night of the incident. The jury was also made aware that Hardin did not tell police that he was scared of Petitioner and Griggs on the night of the incident. Hardin's cross examination revealed sufficient information to appraise the jury of the witness's veracity, and therefore, confrontation demands were satisfied. *Boggs*, 226 F.3d at 736. Accordingly, the claim is without merit.

**2. Prosecutorial Misconduct**

Petitioner next asserts that the prosecutor committed acts of misconduct that rendered his trial fundamentally unfair.  Specifically, Petitioner asserts that it was improper for the prosecutor to ask him on cross examination whether the witnesses who testified against him were lying.

It is true that a number of courts, both state and federal, have held that it is improper for a prosecutor to ask a witness to testify about the veracity of another witness. *See United States v. Sanchez*, 176 F.3d 1214, 1219-20 (9th Cir. 1999) (citing cases); *United States v. Sullivan*, 85 F.3d 743, 749-50 (1st Cir. 1996); *United States v. Montalvo*, 20 F. Supp. 2d 270, 277-78 (D.P.R. 1998) (citing cases). All of these cases, however, were direct appeal cases in which the courts exercise supervisory powers over both the trial courts and prosecutors. A federal habeas court has no such supervisory powers over state courts or state prosecutors. *See Murphy v. Florida*, 421 U.S. 794, 797 (1975). There is no Supreme Court case holding that questions of this type, as a matter of federal constitutional law, amount to a denial of due process. *See Coronado v. Almager*, No. CV 08-00940, 2009 U.S. Dist. LEXIS 80735, 2009 WL 2900288, at *11 (C.D. Cal. Sept. 02, 2009) ("The United States Supreme Court has never held that a prosecutor commits misconduct when she asks a defendant whether government witnesses are lying."). Accordingly, the Michigan Court of Appeals's decision that Petitioner's trial was not rendered unfair by this line of questioning is neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  The claim is therefore without merit.

## 3. Ineffective Assistance of Appellate Counsel

Petitioner asserts that his appellate counsel was ineffective for failing to raise his fourth and fifth claims during his direct appeal.  Because, as discussed below, these two claims are without

-13-

merit, Petitioner's appellate counsel was not ineffective for failing to raise the claims on direct review. Failing to raise a meritless claims that haver no chance of succeeding does not constitute ineffective assistance of appellate counsel. *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

### 4. Admission of Tape-Recording

Petitioner argues that his right to confrontation was violated by the admission at trial of the recorded conversation between Griggs and Keith Johnson.

Keith Johnson was found dead on the morning of the preliminary examination. It was unclear whether he had been murdered or committed suicide. His recorded conversation with Griggs was presented to Petitioner's jury. Griggs testified at trial and was subjected to cross examination by Petitioner's counsel.

There is no violation of the Sixth Amendment's Confrontation Clause when the witness testifies at trial and is subject to unrestricted cross-examination. *See United States v. Owens*, 484 U.S. 554, 560 (1988); *see also Crawford v. Washington*, 541 U.S. 36, 59, n. 9 (2004). As the Supreme Court has explained, "where the declarant is not absent, but is present to testify and to submit to cross examination, our cases, if anything, support the conclusion that the admission of his out of court statements does not create a confrontation clause problem." *California v. Green*, 399 U.S. 149, 162 (1970). In this situation, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Owens*, 484 U.S. at 560 (internal citations omitted). The incriminating portion of the recording was Griggs's statements about Petitioner's participation in the murders, not Keith Johnson's questions to Griggs. Because Griggs testified at Petitioner's trial and was subject to

-14-

cross-examination, the admission of his out-of-court statements to Keith Johnson did not violate Petitioner's Sixth Amendment right to confrontation.  The claim is therefore without merit.

### 5. Reasonable-Doubt Jury Instruction

Finally, Petitioner claims that the jury instruction defining the beyond-a-reasonable-doubt standard was erroneous.

"The government must prove beyond a reasonable doubt every element of a charged offense." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (*citing In re Winship*, 397 U.S. 358 (1970)). "[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Id*. at 5, 114 S. Ct. at 1243 (internal citation omitted). "Rather, 'taken as a whole, the instructions [must] correctly convey the concept of reasonable doubt to the jury.'" *Id*. at 5, 114 S. Ct. at 1243 (*quoting Holland v. United States*, 348 U.S. 121, 140 (1954)) (alteration in original).

The trial court instructed the jury on the prosecutor's burden of proof as follows:

Now, the standard of proof again is proof beyond a reasonable doubt. So we are only asking you to be reasonable. Reasonable doubt is exactly what the words imply. It's a doubt that's based on reason and common sense. A fair, honest, and reasonable doubt. The kind of doubt that you can have a reason for having. Now, a reasonable doubt is not a flimsy or vain, emotional, or fictitious doubt. It is not a possibility of innocence. It is not a hunch or a gesture. It's a fair, honest, and reasonable doubt. The kind of doubt that you can assign a reason to having. If you can say that you have an abiding conviction to a moral certainty that the People have met their burden, bring back a verdict of guilty.

In other words, what you're asked to do is not leave your commonsense and reasoning outside of the door. You take that into thejury room with you and you

-15-

apply your everyday experiences and your common sense when you're determining the evidence in this case.

Tr. V, 86-87.

Petitioner takes issue with the trial court's "moral certainty" language. While the United States Supreme Court in *Cage v. Louisiana*, 498 U.S. 39, 41 (1990), invalidated a jury instruction that defined reasonable doubt in terms of "grave uncertainty" and "actual substantial doubt" and required conviction based upon "moral certainty," the Court later limited that holding in *Victor*. In *Victor*, the Court ruled that the mere use of the term "moral certainty" in a jury instruction defining reasonable doubt by itself does not violate due process, because it merely impresses upon the jury the need to reach a subjective state of near certainty of guilt. *Victor*, 511 U.S. at 14-16. The Court further found that use of the term "moral certainty" in the challenged instruction did not violate due process because the instruction provided that the jurors had to have an abiding conviction as to the defendant's guilt, equated moral certainty with doubt that would cause a reasonable person to hesitate to act, and told the jurors to consider the evidence without indulging in speculation, conjectures, or unsupported inferences. *Id*. at 21-22, 114 S. Ct. at 1250-51. The Court distinguished the instruction in *Cage*, which failed to provide any explanation or meaning for the phrase "moral certainty."

The Sixth Circuit has since held that the use of the term "moral certainty" does not automatically render a jury instruction on reasonable doubt fundamentally unfair. In *Austin v. Bell*, 126 F.3d 843 (6th Cir.1997), the Sixth Circuit ruled that a reasonable doubt instruction including the phrase "moral certainty" did not impermissibly lower the burden of proof because the instruction also provided that reasonable doubt was "an inability to let the mind rest easily" after considering the evidence. *Id*. at 847. The court concluded that the "moral certainty" language, considered in light

-16-

of the entire instruction, did not create a reasonable likelihood that the jury impermissibly applied the jury instruction. *Id*.

This case is consistent with *Victor* and *Austin*. The trial court's reasonable doubt instruction conveyed the proper degree of certainty for conviction to the jury, referring to an "abiding conviction" of guilt and equating moral certainty with a fair, honest, and reasonable doubt. The trial court also explained that Petitioner was presumed innocent and that the burden of proof was on the prosecutor. Given such circumstances, Petitioner cannot establish that the reasonable doubt jury instruction impermissibly lowered the burden of proof or otherwise rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.


### IV.  Conclusion

Before Petitioner may appeal this decision, a certificate of appealability ("COA") must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37. Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims.

Accordingly, a certificate of appealability is **DENIED**.

## V. Order

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is

**DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.




s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  May 6, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 6, 2013, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135